446 So.2d 274 (1983)
Kathleen AUSTEN
v.
Wallace SHERWOOD, Cavalier Insurance Company, Mississippi Press Register, Inc. and Liberty Mutual Insurance Company.
No. 83-C-0655.
Supreme Court of Louisiana.
September 2, 1983.
On Rehearing February 27, 1984.
Rehearing Denied March 23, 1984.
Perrin C. Butler, Perrin Butler, Ltd., Leonard J. Cline, Metairie, for applicant.
Thomas M. Nosewicz, Madeleine Fischer, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, David M. Cambre, Dillon & Cambre, New Orleans, for respondents.
BLANCHE, Justice.
Plaintiff Kathleen Austen filed suit against Wallace Sherwood and his automobile liability insurer, Cavalier Insurance Co., to recover damages she sustained when Sherwood rammed into the rear of her automobile as she waited at a traffic light on the Westbank Expressway in Jefferson Parish. After deposing Sherwood, the plaintiff joined as defendants Sherwood's employer, the Mississippi Press Register, and its liability insurer, Liberty Mutual Insurance Co., urging that the Register was liable for her injuries under the doctrine of respondeat superior because the accident occurred while Sherwood was acting in the course and scope of his employment.
The trial court rendered judgment for the plaintiff against all defendants for $116,059.39. The judgment was later amended as to Cavalier and Sherwood, limiting their liability to the $10,000 limit of Sherwood's automobile liability insurance policy. The trial court cast the Register and Liberty Mutual in judgment for the remainder, ruling that the accident had occurred while Sherwood had been acting in *275 the course and scope of his employment. The court of appeal reversed, ruling that Sherwood had been "clearly on his own time" when the accident occurred. 425 So.2d 818 (La.App.1982).
In our opinion, Sherwood's activities at the time of the accident were not so closely connected in time, place, and causation with his duties as an employee of the newspaper that the Register and Liberty Mutual should be liable for the plaintiff's damages. Accordingly, we affirm.
Wallace Sherwood had been employed by the Mississippi Press Register out of Pascagoula, Mississippi since 1964. His primary job had been that of an "Advertising Accounts Executive," although he had also served as the "Arts Editor" due to his undergraduate background in the theatre. As the Arts Editor, Sherwood wrote a column for the paper entitled "Footlights and Frescoes", in which he reviewed movies, plays, concerts and other artistic functions over the Gulf-coast area of Louisiana, Mississippi and Alabama. Pursuant to his position as an advertising executive, Sherwood received a monthly automobile allowance.[1]
On April 11, 1978, the date of the accident, Sherwood worked his regular job at the Register in Pascagoula until 5:00 p.m. He then left for New Orleans in order to attend the Louis Armstrong Concert at the Jazz and Heritage Festival. Our review of the record shows that Sherwood had written a column on the Festival before April 11.[2] He attended the Festival at the behest of Ann Zimmerman, publicity director for the Festival, who had supplied a press pass for the event.[3]
On the date of the accident, Sherwood charged $9.90 worth of gasoline to his line of credit supplied by the paper. He attended the concert with a friend who lived in New Orleans and consumed several beers while covering the event. After the concert. Sherwood expressed some concern as to whether he should try to drive back to Pascagoula, and his friend suggested that the wiser course might be for Sherwood to spend the night with him in New Orleans, then drive back early in the morning. Sherwood accepted the offer, and the accident occurred while the two were on their way to the friend's house.
The Register has urged that Sherwood was paid only as an advertising executive and was not paid specifically for writing the column. Moreover, asserts the Register, Sherwood attended the concert for his own benefit and enjoyment and, at any rate, his diversion to the house of a friend removed him from the course and scope of his employment were we to nevertheless find that he had attended the Festival pursuant to his employment with the Register. In our view, the evidence preponderates in favor of the conclusion that Sherwood's attendance at the concert was for his own benefit and enjoyment and that it in no way benefited his employer, nor was it related to the service of his employer. Accordingly, we need not consider whether Sherwood's diversion to the house of a friend removed him from the course and scope of his employment or whether Sherwood's activities fell within the "going and coming" or "specific errand" rules.[4]
*276 Sherwood testified at trial that he had worked his regular job in advertising on the date of the accident during his regular hours from 8:30 a.m. until 5:30 p.m. He testified further that no one from the Register had requested or ordered that he attend the Festival that evening; in fact, Sherwood repeatedly acknowledged that he had attended the concert that evening for his own enjoyment because Ann Zimmerman was "nice enough to ask me." Although Sherwood did have some latitude in events he covered in his column "Footlights and Frescoes," he had written a piece on the Festival before he attended the concert on the date of the accident. At trial, Sherwood testified repeatedly that he had attended the Festival that night strictly because he "wanted to," and we do not find mere speculation that Sherwood's attendance at the concert might have supplied fodder for some future column sufficient to support a legal conclusion that Sherwood was acting for his employer by driving to New Orleans from Pascagoula in order to attend the cultural event. There is simply not enough evidence in the record to place Sherwood's activities in attending the Festival on the date in question within the course and scope of his employment with the Register.

DECREE
For the foregoing reasons, the judgment of the court of appeal is affirmed.
LEMMON, J., dissents.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
The majority's decision is based on the factual finding that Wally Sherwood was not acting within the scope of his employment when he was involved in an accident which occurred following his attendance at the Louis Armstrong concert, one of a series of entertainment events comprising the New Orleans Jazz and Heritage Festival. Contrary to the majority opinion that there was insufficient evidence to place Sherwood's activities within the course and scope of his newspaper employment, examination of the record convinces me that the trial judge did not fall into manifest error in so holding.
Sherwood testified at trial that although he was paid only as an advertising account executive he was additionally considered as arts editor of the Mississippi Press Register. Deposition testimony of newspaper management personnel supported the fact that Sherwood was regarded by the paper as its arts editor.
Sherwood testified that his column "helped the paper" and deposed that at its inception the column was meant to benefit the paper's advertisers. The paper's business manager, Floyd Davis, deposed that the column was started to meet subscribers' desires for the entertainment news. Ralph Williams, the paper's advertising manager, testified by deposition that management believed that the column "could add readership to the newspaper."
Both Davis and Williams remarked that Sherwood was assigned the column because he handled the advertising for the paper's entertainment accounts. Thus, there was a connection between his paid position and the column. Advertisers whose products were "plugged" in Sherwood's column were undoubtedly more susceptible to his advertising sales pitch. Sherwood testified by deposition that while he did not receive remuneration per se for writing the column, he took the job in order to view plays, movies and other forms of entertainment at little or no cost, he called *277 it a "dividend" of the job. In sum, the paper perceived an entertainment column as beneficial to the paper because it supported advertisers and potentially attracted subscribers; Sherwood saw the column as a means to free entertainment.
The majority decided that Sherwood was on a personal, rather than business mission when the accident occurred because he had attended another event on the Jazz Festival program the week before and had written a column pertaining to his first visit prior to his trip to the Armstrong concert. According to my brethren, Sherwood was asked to attend the concert as a "friend" of Anna Zimmerman, Jazzfest publicity director, and only returned to the festival for his personal enjoyment. This conclusion is contradicted by Sherwood's deposition testimony of November 25, 1980. At that time Sherwood stated that he had not met Zimmerman personally before the night she gave him a press pass to the concert. He recounted Zimmerman's invitation to return to the festival as, "[w]hy don't you come back next weekend and review the Louis Armstrong concert." (emphasis added) Clearly the publicity director and Sherwood were not friends and her invitation was extended to him as a reporter. Despite the presence of the completed column relating to one aspect of the festival, Sherwood may have written a second column following the second event had the accident not disrupted his trip. He may even have drawn on his concert experience to prepare a story the following year at Festival time. Significantly, Sherwood deposed that he attended the concert partly for work and partly for his own pleasure. While this deposition statement is inconsistent with his trial testimony, it is consistent with his prior statements that he undertook to write the column to gain complimentary entry to various entertainment functions. In other words, he wrote the column because he personally enjoyed free entertainment. This personal enjoyment does not alter the fact that the column was assigned to Sherwood by his employer who reaped the benefits of its publication.
Notably, the tenor of Sherwood's testimony changed in other respects between his 1979 and 1980 depositions and the 1981 trial. At trial the witness said that his attendance at the concert for solely personal reasons was evidenced by his failure to take noteshis usual practice when he covered an event. This directly contradicted his deposition testimony of March 13, 1979 when he stated that his habit was not to take notes, but to work from a program of the performance.
Sherwood's statements prior to trial generally indicated that he had business partly in mind when he attended the Armstrong concert, while his trial testimony minimized his business intent and stressed his personal motivations. Where there is a conflict in testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed on appeal even if the reviewing court believes that its own evaluations are as reasonable as those formed below. Aleman v. Lionel F. Favret Co. Inc., 349 So.2d 262 (La.1977); Canter v. Koehring, 283 So.2d 716 (La.1973). In the present case the trial judge was in the best position to evaluate Sherwood's conflicting statements and credibility. The trier's finding of fact that Sherwood's activity was within the realm of employment duties was reasonable in view of the record and should not have been disturbed on appeal.
The newspaper and its insurer argued that even if Sherwood were actually acting as an employee of the newspaper it would still not be liable for Ms. Austen's injuries since Sherwood was indisputedly on his way from the concert to his overnight New Orleans destination, hence on his personal rather than business time.
Louisiana courts have developed rules to determine whether an employer is vicariously liable for torts committed when an employee is en route to or coming from his job, i.e., if the worker were merely going to or returning from work the employer has not been held responsible for the employee's tort, whereas liability has been imposed for acts committed by employees while on "special errands." However, the *278 more logical and flexible approach to the problem is not whether these technical rules apply, but instead whether the employee is still acting within the scope and course of his employment. An employee's conduct falls within the scope of employment if it is connected in time, place and causation to his employment duties to the extent that a risk of harm is fairly attributable to the employer's business, and if the employee's conduct was not motivated by purely personal considerations entirely extraneous to the employee's interests when the tort was committed. LeBrane v. Lewis, 292 So.2d 216 (La.1974). In Miller v. Keating, 349 So.2d 265 (La.1977) this court noted that in order to cast the employer the employee's "conduct must be shown to be employment rooted, but not necessarily exclusively so." Id. at 269. Further, the tort must be "reasonably incidental to the performance of the employee's official duties, but "[b]eyond these considerations there are no magical requirements." Id.
The record reflects that Sherwood was invited to attend a phase of the Jazz Festival for business reasons. He had previously attended events in New Orleans and Mobile in order to prepare his column. It is reasonable that attendance at a nighttime concert would entail an overnight stay in New Orleans. Under these facts his ride to overnight accommodations was reasonably incidental to his business-related trip, substantially employment rooted, and definitely not a mere "frolic" motivated by purely personal considerations entirely extraneous to his employer's interests.

ON REHEARING
WATSON, Justice.
In this suit arising out of an automobile accident, the issue is whether Wallace Sherwood was in the course and scope of his employment with the Mississippi Press Register when he negligently injured plaintiff. The original opinion erroneously decided the issue adversely to plaintiff.

FACTS
Wallace Sherwood drove his car into the rear of Kathleen Austen's automobile as she waited at a traffic light on the Westbank Expressway in Jefferson Parish. Plaintiff Austen sued: Sherwood; his insurer, Cavalier Insurance Company; his employer, the Mississippi Press Register; and its liability insurer, Liberty Mutual Insurance Company.
The trial court gave plaintiff a judgment against all defendants for $116,059.39, limiting the liability of Sherwood and Cavalier to the $10,000 limits of Sherwood's automobile liability insurance policy. The court of appeal reversed, ruling that Sherwood had been "clearly on his own time" when the accident occurred. 425 So.2d 818 at 820 (La.App. 5 Cir.1983). A writ was granted to review the judgment of the court of appeal. 431 So.2d 2 (La., 1983). After that judgment was affirmed, a rehearing was granted.
Wallace Sherwood had been employed by the Mississippi Press Register in Pascagoula, Mississippi, since 1964. His primary job was "[a]dvertising account executive" (Exhibit D-2, p. 6) and he handled all of the "entertainment type accounts". (Exhibit P-3, p. 36) He also served as the arts editor and wrote a daily column entitled "Footlights and Frescoes" which reviewed movies, plays, concerts and other cultural activities in the Gulf Coast area.[1] Sherwood's function as arts editor was interrelated with his advertising duties. The advertising manager, Ralph E. Williams, said that the newspaper benefited from the column. The business manager of the paper, Floyd Davis, admitted that the column was regarded as "a good selling point". (Exhibit D-2, p. 35) Because of his extremely short stature, Sherwood could not use a company car but received a gasoline allowance of ten dollars a week. If he had been of average height, he would have had the *279 use of a company car, because "everybody else on company business drives a company car." (Exhibit P-6, p. 31)
On April 11, 1978, the day of the accident, Sherwood worked at the Register in Pascagoula until 5:00 P.M. before leaving to attend a Louis Armstrong concert at the Jazz and Heritage Festival in New Orleans. Sherwood had written a column about the festival the preceding week, which mentioned that he planned to return for the Armstrong concert. His column of April 12, 1978, stated that he had been present for "A Tribute to Louis Armstrong". (Exhibit D-1) He attended both for "information" and "entertainment". (Exhibit P-5, p. 26)
Before leaving Pascagoula, Sherwood charged $9.90 worth of gasoline to the Mississippi Press Register. He attended the concert on a press card[2] with a New Orleans friend and consumed three beers. After the concert, Sherwood decided to stay the night with his friend and return to Pascagoula early the next morning. The accident occurred enroute to the friend's house. As a result of the accident, Sherwood did not review the concert in his column.

CONCLUSION
LSA-C.C. art. 2320 provides in pertinent part that:
"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."
Sherwood was performing a function for which he was employed. During the trip to New Orleans, Sherwood was acting within the scope of his employment as arts editor at the Mississippi Press Register. Compare Maas v. Harvey, 200 La. 736, 8 So.2d 683 (1942). The fact that gathering information for the column was not his primary employment duty is immaterial. Sherwood's business trip was not completed at the time of the accident. The decision to avoid a late night return to Pascagoula cannot be characterized as a deviation from his business purpose. It was undoubtedly motivated by safety considerations.
Although Sherwood was operating his own automobile at the time of the accident, this was only because his small size made company cars unavailable to him. The Mississippi Press Register paid for the gasoline used for the trip and the newspaper clearly benefited from the journey. Sherwood's business and personal pursuits were intermingled. While he attended the concert for entertainment, he was simultaneously obtaining information which furthered his employer's business interests.
Wallace Sherwood's trip was primarily "employment-rooted". LeBrane v. Lewis, 292 So.2d 216 at 218 (La., 1974). When an employee's tortious conduct is closely related to his employment duties, the employer is liable for resulting damages. LeBrane v. Lewis, supra; Miller v. Keating, 349 So.2d 265 (La., 1977).
The trial court concluded that:
"Mr. Sherwood attended the concert in his capacity as arts editor of the Mississippi Press Register. His superiors approved of and encouraged Mr. Sherwood's travels in this regard. The newspaper directly benefited from Mr. Sherwood's column which, in turn, was made more appealing to the readers by Mr. Sherwood's personal attendance at the functions and events about which he wrote. Although Mr. Sherwood attended the concert partly for personal enjoyment, this fact does not mean that his attendance was not in the course and scope of his employment. There is no prohibition against an employee deriving personal enjoyment from his work." (Tr., pp. 260-261)
The decision of the trial court that Wallace Sherwood was acting within the course and scope of his employment with the Mississippi *280 Press Register at the time of this accident is supported by the evidence and is not clearly wrong. The court of appeal erred in substituting its interpretation of the facts for that of the trial court.
For the foregoing reasons, the original opinion of this court is recalled; the judgment of the court of appeal is reversed and the judgment of the trial court is reinstated.
REVERSED.
MARCUS, J., dissents, adhering to the opinion on original hearing.
BLANCHE, J., dissents and assigns reasons.
BLANCHE, Justice (dissenting).
The court of appeal specifically found that Sherwood was clearly on his own time which in no way benefited his employer nor was it related to the service of his employer. This writer on original hearing reviewed the evidence and came to the same conclusion. Adhering to reasons assigned on original hearing, I respectfully dissent.
NOTES
[1] Sherwood received the small gasoline allowance ($10 per week) in lieu of a company car. Because of his dwarfism, Sherwood was limited to automobile travel in his own specially-requipped vehicle. Other advertising executives had the use of company cars. It is uncontroverted that the stipend to Sherwood was in no way related to his activities as the "Arts Editor."
[2] The article appeared the day after the accident, April 12. No further articles were written about the concert after Sherwood returned to Pascagoula.
[3] Apparently, Sherwood had attended the Festival the weekend before the accident and was invited back by Zimmerman as a "friend."
[4] The court of appeal opinion held that Sherwood's attendance at the concert was for his personal enjoyment and not pursuant to his employment with the Register. 425 So.2d at 819-20. However, the court also remarked, in dictum, that even if Sherwood had attended the concert in the course of his employment, his diversion to the house of a friend removed him from the scope of his employment because "[t]he negligent acts of an employee on his way to or from work are not generally imputable to an employer," citing Boudreaux v. Yancey, 319 So.2d 806 (La.App. 1st Cir.1975). Id. The plaintiff has argued extensively in brief that the "coming and going" rule should not apply and suggests that Sherwood was on a "specific errand" for the Register, an exception to the "coming and going" rule. As noted supra and discussed infra, we find such a discussion unnecessary since, in our view, Sherwood's trip to New Orleans and attendance at the Festival was purely personal and wholly without the course and scope of his employment.
[1] The column was not printed on Mondays, and the paper did not have a Saturday edition. The column was cancelled to prevent the paper from being "incriminated" in this case. (Exhibit P-5, p. 17)
[2] The point is significant that Sherwood gained admission to the Festival on a press card; at an unsuspecting time he represented himself to be on newspaper business and his credentials were accepted by a disinterested third party.