489 So.2d 299 (1986)
Mrs. Emma P. TAMPKE, et al.
v.
FINDLEY ADHESIVES, INC., et al.
No. CA-4588.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1986.
A. Remy Fransen, Jr., Wiedemann & Fransen, New Orleans, for plaintiffs-appellees Emma P. Tampke, Michael S. Tampke, and Juliet P. Tampke.
Francis G. Weller of Deutsch, Kerrigan & Stiles, New Orleans, for defendants-appellees Findley Adhesives, Inc., H.B. Stuck Adhesives, Inc. and Transp. Ins. Co.
Kenneth C. Hughes, New Orleans, for intervenor-appellant Transp. Ins. Co.
Before GARRISON, KLEES and WARD, JJ.
KLEES, Judge.
This appeal arises from the institution of a wrongful death action. Plaintiffs, widow and children of decedent, Thomas Tampke, filed suit seeking damages for the murder of Tampke. Included as defendants were Allen Johnson, Tampke's murderer and co-employee, Findley Adhesives, Inc., H.B. *300 Stuck Adhesives, Inc., Tampke's and Johnson's employers, and CNA Insurance Company, Findley's and Stuck's insurer. Transportation Insurance Company, Findley's worker's compensation insurer, intervened in the action. The trial court directed a verdict in favor of defendants Findley Adhesives, Inc., H.B. Stuck Adhesives, Inc., and CNA Insurance Company holding that defendant Allen Johnson, did not act within the scope of his employment. Judgment was cast in favor of the plaintiffs and against defendant, Allen Johnson. The trial court also cast judgment in favor of the intervenor in accordance with stipulations filed.
Plaintiffs and intervenor appeal the judgment of the trial court dismissing plaintiffs' action against H.B. Stuck Adhesives, Inc., Findley Adhesives, Inc., and CNA Insurance Company. The issue presented on appeal is whether the defendants are vicariously liable for the intentional tort of Allen Johnson.
On May 8, 1981, the plaintiffs' decedent, Thomas Bert Tampke, an employee of Findley Adhesives, Inc., was killed by a fellow employee, Allen Johnson. Tampke was plant manager and chief of sales for Findley Adhesives in New Orleans. Johnson had been employed as a truck driver and a warehouse man. The day previous to the slaying, Johnson was involved in a hit and run accident while driving a Findley truck. Early on May 8th, Tampke went to the scene of the accident and returned to the office with a piece from a brown automobile that matched the vehicle allegedly struck by a Findley truck. Upon his return, Tampke informed his office manager, Diane Bradshaw, that he intended to fire Johnson.
Around 4:15 p.m., Tampke phoned Michael Eviston, manufacturing manager for Findley's Southern Division, and reported the accident involving the Findley truck. Tampke also stated that he and Johnson had gone to the scene of the accident and that Johnson had not yet returned to the plant. Tampke feared that Johnson may have stolen the truck. Tampke informed Eviston that he intended to fire Johnson based upon the hit and run incident the day before and several other incidents.
At approximately 4:30 p.m., when Tampke was ending his conversation with Eviston, Johnson pulled into the yard with the truck.
As Tampke was hanging up the phone, Rev. James McGee, Sr., another Findley employee, entered the office. Tampke asked McGee not to leave. Johnson then entered the office and began arguing with Tampke as to whether or not Tampke had instructed him to return to the scene of the accident.
The discussion grew very heated with Johnson arguing that Tampke was firing him for his own (Tampke's) mistake. At some point, Tampke stated that Johnson was "finished." Immediately thereafter, Johnson slapped Tampke, and then struck him with a karate kick to the face. Tampke fell to the floor, tried to rise, and Johnson kicked him again in the head. Tampke fell unconscious.
Upon regaining consciousness, Tampke proceeded to his own office. Johnson followed with McGee. Johnson then began taunting and striking Tampke with a screwdriver and/or pliers and threatening to kill him. Tampke pleaded with Johnson, asking, "Why are you going to kill me? I'm trying to help you." Johnson retorted "You fired me." McGee also was threatened and feared for his life. After further abuse, Johnson led Tampke and McGee into the Findley warehouse area, picked up a machete that was used in plant operations and killed Tampke by striking him in the face, head and neck with the machete.
On the basis of these facts, plaintiffs argue that the trial court erred in directing the verdict in favor of defendants Findley, Stuck, and CNA Insurance Company. Plaintiffs contend that the employer should be held vicariously liable as Johnson acted within the course and scope of his employment.
A directed verdict will only be granted when, after viewing all of the evidence *301 presented, and resolving all inferences in favor of the opposing party, reasonable men could not arrive at a verdict for the non-mover. L.S.A.-C.C.P. art. 1810; Anderson v. McCarty, 462 So.2d 630 (La. 1985). In the case at bar, the trial court directed the verdict in favor of appellees, holding that defendant, Allen Johnson, was not acting in the scope of his employment.
In order for an employer to be held vicariously liable for an intentional tort of a co-employee against another co-employee, the tort-feasor/employee must be acting in the course and scope of his employment.[1] L.S.A.-C.C. art. 2320; Weysham v. New Orleans Public Service Inc., 385 So.2d 19 (La.App. 4th Cir.), writ refused, 392 So.2d 690 (La.1980); LeBrane v. Lewis, 292 So.2d 216 (La.1974). The court, in determining whether the employee is acting in the course and scope of his employer, must consider whether the action of the employee is connected in time, place, and causation to his employment duties. Such a determination depends upon the facts and circumstances of each case. Weysham, supra; Johnson v. Dixon, 457 So.2d 79 (La. App. 4th Cir.), writ denied, 462 So.2d 196 (La.1984).
When, as in the case at bar, a dispute involving an employee erupts into violence, the question becomes whether the act was "primarily employment rooted" and was "a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." Johnson v. Dixon, 457 So.2d at 82, quoting LeBrane v. Lewis, supra. A review of the record indicates that the defendant, Allen Johnson, had, for all purposes, been fired by Bert Tampke at the time of the assault. The dismissal appears to be the main reason behind Johnson's assault on Tampke, Johnson's supervisor. Further, the assault on Tampke cannot be regarded as a "risk of harm fairly attributable to the employer's business." Johnson's actions could, in no manner, be considered as benefitting his employer's business. In fact, the reverse is more correct. Johnson's actions deprived his former employer of one of its most valued employees. Johnson's assault on Tampke was clearly motivated by his, Johnson's, own personal motives.
Accordingly, the judgment of the trial court directing the verdict in favor of Findley Adhesives, Inc., H.B. Stuck Adhesives, Inc., and CNA Insurance Company, and dismissing plaintiffs' claims is affirmed.
AFFIRMED.
NOTES
[1] The Louisiana Worker's Compensation Act, L.S.A.-R.S. 23:1032, was amended by Act 147 of 1976 to allow an employee to pursue his right under the compensation act and any other remedy available against the employer and other persons under general tort law for injuries resulting from an intentional act. Cf. Bazley v. Tortorich, 397 So.2d 475 (La.1981); Jones v. Thomas, 426 So.2d 609 (La.1983).