594 So.2d 571 (1992)
Ernestine SAMUELS and Leotha Samuels, Individually and on behalf of the minor child, Rachelle Harris
v.
SOUTHERN BAPTIST HOSPITAL, ABC Insurance Company and Raymond Stewart.
No. 91-CA-0213.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1992.
Rehearing Denied March 18, 1992.
Writ Denied May 22, 1992.
*572 Henry L. Klein, Frederick P. Heisler, Heisler & Wysocki, New Orleans, for appellee.
Charles R. Capdeville, Metairie, for appellants.
Before BARRY, BYRNES and WARD, JJ.
BYRNES, Judge.
Southern Baptist Hospital (Baptist) and the Continental Insurance Company (Continental) appeal a judgment in favor of Rachelle Harris based on vicarious liability for the intentional tort of Baptist's former employee. We affirm.
At the age of 16, Rachelle Harris was committed to the psychiatric unit of Baptist Hospital following a suicide attempt on July 4, 1988. On July 16, 1988, Ms. Harris was raped after midnight by a hospital nursing assistant who was a full-time employee in the psychiatric unit. Ms. Harris testified that the nursing assistant, Raymond Stewart, was touching her when she woke up. He persisted although she cried and told him she was a virgin. Ms. Harris related that she went into the bathroom to try to get away from him and she washed up. Ms. Harris stated that fifteen minutes later Mr. Stewart came into the bathroom which had no lock and he sexually attacked her. After Mr. Stewart left the bathroom, Ms. Harris went to the nurse's station and asked to use the phone. The nurse told her she would have to wait until regular hours. Ms. Harris then went to the room of another patient, Rozanna Moore, and told her she had been raped. Ms. Moore testified that Rachelle Harris was shaking, upset and in hysterics. While Ms. Harris went to give a specimen, Mr. Stewart went into Ms. Moore's room. He showed Ms. Moore pictures of his wife and children in his wallet and asked her to calm Ms. Harris down. Ms. Moore asked him to get her a phone, which he put outside Ms. Moore's door. Ms. Moore called her mother who called Ms. Harris's mother. Meanwhile, Mr. Stewart disappeared from the floor. His employment was terminated on July 16, 1988 for abandoning his job without notice. Ms. Harris's mother, Ernestine Samuels, finally spoke to Ms. Harris and went to the hospital and found her daughter with a nurse. Dr. Isabelle L. Ochsner performed a rape examination in the emergency room around 6:30 a.m. She found no evidence of physical trauma but testified that Rachelle Harris was hysterical and had to be sedated. The specimen from the police crime lab examination of Ms. Harris' clothing tested positive for male sperm. A few weeks later, Ms. Harris was transferred to Coliseum Medical Center.
*573 Ernestine and Leotha Samuels, joint tutrixes of Rachelle Harris, filed suit against Raymond Stewart, Baptist and its insurer on November 18, 1988. Thereafter, the suit was amended, naming Continental Insurance Company as Baptist's insurer. In a second amending and supplemental petition, Ms. Harris was substituted as a major for the Tutrixes. Additionally, Ernestine Samuels filed another cause of action claiming damages for suffering substantial emotional distress arising out of the injury to her daughter. An exception of prescription was granted in regard to Ms. Samuels' claim. Ms. Harris's father, Charles Harris, filed a petition of intervention, claiming damages for loss of service and society resulting from the injury to his daughter. In January, 1989 Raymond Stewart entered a plea of guilty to simple rape in Orleans Criminal District Court. Prior to trial, Raymond Stewart was dismissed as a defendant in the present civil action and the trial court severed Mr. Harris's petition for intervention. After a jury trial on October 17 and 18, 1989, the trial court entered an award in favor of Rachelle Harris for $450,000.
On appeal, defendants contend that: (1) they are not vicariously liable for the intentional actions of Raymond Stewart; and (2) the jury award is excessive.

VICARIOUS LIABILITY
Baptist argues that it is not vicariously liable for the actions of its employee whose duties did not include sexually oriented activity. Baptist maintains that there was no relationship between the employee's act and the employer's business; the employee was performing personal activities outside the tasks of a nursing assistant; and there could be no reasonable expectation that the employee would commit an act of rape.
Employers are answerable for the damage caused by their employees in the exercise of the functions in which they are employed. LSA-C.C. art. 2320; Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990). When determining whether the employer is liable for the acts of an employee, factors to be considered are whether the tortious act was: (1) primarily employment rooted; (2) reasonably incidental to the performance of the employee's duties; (3) occurred on the employer's premises; and (4) occurred during hours of employment. LeBrane v. Lewis, 292 So.2d 216 (La.1974). It is not necessary that all factors be met in order to find liability, and each case must be decided on its merits. Turner v. State, 494 So.2d 1292 (La.App. 2nd Cir. 1986). The fact that the primary motive of the employee is to benefit himself does not prevent the tortious act of the employee from being within the scope of the employment; if the purpose of serving the employer's business actuates the employee to any appreciable extent, the employer is liable. Ermert, supra; Austen v. Sherwood, 446 So.2d 274, 279-280 (La.1983), Alexander v. Rivers, 560 So.2d 999 (La.App. 4th Cir.1990).
In Ermert, supra, the Louisiana Supreme Court distinguished between liability in negligence cases and cases involving vicarious liability. The scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks. Ermert, supra, 559 So.2d at 477. The Ermert decision held that the defendant corporation was vicariously liable for the plaintiff's injuries caused when the corporate president's shotgun accidently discharged at a hunting camp. Although the corporation did not own the camp, the president purchased materials for the camp through the corporation's account and used the corporation's equipment to help with the camp's construction. The Court recognized corporate liability based on the finding that the corporate president was acting within the scope of his employment while at the hunting camp because he had established the practice of using the camp and his relationship with his hunting friends for the purpose of furthering his employer's business interests. See also Applewhite v. City of Baton Rouge, 380 So.2d 119 (La.App. 1st Cir.1979), in which the City was held vicariously liable for the conduct of police officers who used their position of trust and authority to order the *574 plaintiff into their patrol car where they raped her. In Smith v. Orkin Exterminating Co., Inc., 540 So.2d 363 (La.App. 1st Cir.1989), an exterminating service was held liable to a homeowner for injuries sustained in a sexual assault by the service's employee. The employee left a window unlocked so he had access to return and assault the homeowner. The Service was directly liable for its negligence in failing to properly administer its method of providing security by polygraph examinations of its employees where it would have found that the employee recently had been arrested for burglary.
"If the tortious conduct of the employee is so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests, it can then be regarded as within the scope of the employer's employment, so that the employer is liable in tort to third persons injured thereby." Turner v. State, 494 So.2d 1292 (La.App. 2nd Cir.1986).
In the present case Brody Smith, Personnel Director of Baptist, testified that Baptist had performed a background check of Raymond Stewart, which showed no criminal record and no unfavorable responses from former employees. The employee's background included an honorable discharge from the United States Army. Further, the employee had not been involved in any other unfavorable incident during his employment by Baptist from February 9, 1988 until the date of the assault in July, 1988. Baptist was not negligent for employing Stewart as a nursing assistant in the psychiatric unit. However, vicarious liability is imposed upon the employer without regard to his own negligence or fault; it is a consequence of the employment relationship. Sampay v. Morton Salt Co., 395 So.2d 326 (La.1981), appeal after remand, 482 So.2d 752 (La.App. 1st Cir.1985), writ granted, 488 So.2d 684 (La.1986) and appeal dismissed, 496 So.2d 315 (La.1986). The sexual assault occurred on the premises in the psychiatric unit while Stewart was on duty from 11:00 p.m. until 7:00 a.m. Ensuring a patient's well-being from others, including staff, while the patient is helpless in a locked environment is part of the hospital's normal business. Taking care of the patient's well-being is part of the duties of a nursing assistant. The tortious conduct committed by Stewart was reasonably incidental to the performance of his duties as a nurse's assistant although totally unauthorized by the employer and motivated by the employee's personal interest. Further, Stewart's actions were closely connected to his employment duties so that the risk of harm faced by the young female victim was fairly attributable to his employer, who placed the employee in his capacity as a nurse's assistant and in a position of authority and contact with the victim. See Turner, supra, 494 So.2d at 1295.
Considering the principals of vicarious liability relative to the facts in this case, the trial court was not clearly wrong in determining that Stewart was acting within the scope of his employment and that Baptist was vicariously liable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Ermert, supra.

DAMAGES
Baptist and Continental also contend that the damage award of $450,000 is excessive. Defendants note that there was no corroborative proof at trial of the itemized medical expenses and refers to three rape cases where the awards were $50,000, $125,000 and $180,000.
In order for the appellate court to disturb a damage award, the record must clearly reveal that the trier of fact abused its discretion in making its award. LSA-C.C. art. 2324.1; Coco v. Winston Industries, 341 So.2d 332 (La.1976). Only after a determination of abuse has been reached is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award in the present case. Reck v. Stevens, 373 So.2d 498 (La.1974); Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La. *575 1991). The reviewing court must evaluate the particular injuries and their effects on the particular injured persons. Reck, supra. The tort-feasor takes the victim as he finds her. Cazenave v. Pierce, 568 So.2d 1360 (La.1990); Arruebarrena v. Boh Bros. Const. Co., 539 So.2d 78 (La.App. 4th Cir.1989).
Considering the particular circumstances in this case, Rachelle Harris' father had left her mother prior to the child's birth. Later, Ms. Harris had been physically abused by her father. Prior to the rape incident Ms. Harris had attempted suicide twice, once by slashing her wrists and once by overdosing on Tylenol, Motrin and other non-prescription drugs. On July 4, 1988, at the age of 16, Ms. Harris ran away from home and was chased down by her mother, who persuaded her to get into the car. On the way home, they stopped at a grocery store where Ms. Harris purchased a bottle of Nytol which she took with a coke purchased at a coke machine. Her mother drove to Baptist Hospital where Ms. Harris was admitted to the psychiatric care unit of Baptist Hospital. After the rape on July 16, 1988, Ms. Harris was transferred to Coliseum Medical Center under the care of Dr. Robert Barnes. She then returned to Houston where her mother resided and Ms. Harris was placed on out-patient therapy at Charter House. After a suicide attempt in December, 1988 when she took an overdose of anti-depressants and had her stomach pumped, Ms. Harris was admitted to Charter House Hospital where she remained until March 8, 1989, under the care of Dr. Thomas Merck. Thereafter, Ms. Harris remained under the care of Dr. Mary Ann Ty.
The videotaped deposition of Dr. J. Robert Barnes was shown to the jury at trial. Testifying in the field of psychiatry, Dr. Barnes first saw Rachelle Harris on January 6, 1988. He related that Ms. Harris had school problems and was expelled from school in New Orleans and in Houston. She began having suicidal thoughts in the summer of 1987 and had an eating disorder, bulimia, associated with depression. Dr. Barnes treated Ms. Harris at the Coliseum Medical Center when she was admitted on July 26, 1988. He opined that the major reason she was in Coliseum Medical Center was because of the rape. He found that she had severe depression but he did not prescribe antidepressants because she overdosed in the past and she left to go to Houston after three weeks. Dr. Barnes testified that the rape experience had a significant impact on Ms. Harris's ability to trust others, in her relation to men and ability to function in a sexual way when she was mature. Dr. Barnes determined that Ms. Harris needed continued extended treatment and his final diagnosis was acute post traumatic stress syndrome.
Dr. Mary Ann Ty of Houston was tendered as an expert in the filed of psychiatry. Her deposition shows that she treats Rachelle Harris on an individual outpatient therapy basis. Ms. Harris's therapy was increased from once to twice a week because of increased symptoms. Dr. Ty found Ms. Harris very depressed with an inability to interact with her peers. Dr. Ty opined that Ms. Harris was suicidal and unable to undertake activities she previously enjoyed. Dr. Ty noted that Ms. Harris was still in very active treatment two years after the rape and would require long term outpatient treatment and future hospitalization because of the rape. Dr. Ty's diagnosis included an acute post traumatic stress disorder.
Dr. Beverly Howze, an expert in the field of clinical psychology, testified that she saw Rachelle Harris for three sessions in New Orleans. She noted that rape victims are fearful of being involved with people in general, especially males. Dr. Howze related that Ms. Harris was afraid to get in the lunch line at school or to go to the bathroom alone. She must go with someone to public places. She does not go to parties or date and is called a "lesbian" and "dyke" by her female peers. Ms. Harris had recurring flashbacks which are common to rape victims. Dr. Howze noted that Ms. Harris was a fragile individual who was raped at the age of 16, a very sensitive time of her development; and that the rape had an enormous impact on the victim because she was a virgin. Dr. Howze opined that the rape exacerbated Ms. Harris's prior *576 problems with her ability to deal with her mother and school. Dr. Howze concluded that Ms. Harris's prognosis was very poor to nil for her to marry or have children. Dr. Howze related that Rachelle currently took two antidepressants and it was predictable that she will need support, medication and psychotherapy in the future.
At trial Mrs. Ernestine Samuels testified concerning the medical costs incurred by her daughter Rachelle Harris after the rape incident, which totaled $73,941.44. The jury awarded Rachelle Harris a total of $450,000 in damages. We find no abuse of discretion in this damage award based upon the expert witnesses' testimony concerning plaintiff's particular circumstances, and in view of the emotional anguish and the extensive treatment incurred.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
WARD, J., dissents with reasons.
WARD, Judge, dissenting.
A simple reading of the majority opinion which describes the precautions Baptist Hospital took before employing Raymond Stewart shows, without question, that Baptist Hospital was not negligent by employing Stewart. This is not a case of negligent employment and the majority does not rest its decisions on that. And I wholeheartedly agree with that portion of the decision.
Nor does the majority find that Baptist Hospital is liable under a theory of negligence by failing to provide supervision. I also agree with the majority here. This is not a case of negligent supervision because Baptist Hospital does not, in my opinion, breach a duty of care and security by employing a male nurse among other nurses on duty in the hospital, even when that male nurse is assigned to the psychiatric ward. Supervisors were present, but it has not been shown they breached their duty. They cannot be expected to be everywhere in the hospital, and Baptist cannot be expected to provide layer upon layer of night supervisors. The cost of medical care is already much too expensive and the economic factor is one that weighs heavily here.
As I understand the majority, my colleagues hold Baptist Hospital liable solely on the theory that Baptist is accountable for the acts of their employees, even criminal acts, finding as they must, that the criminal acts were committed in the course and scope of Stewart's employment. The majority relies on La.C.C. Art. 2320, and Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990). I, on the other hand, do not believe either supports the majority conclusion.
La.C.C. Art. 2320 makes employers answerable for the damage occasioned by their employees "in the exercise of the functions in which they are employed." But La.C.C. Art. 2320 goes on to say responsibility only attaches when the employer "might have prevented the act which caused the damage," and has not done so. If the majority did not find either negligent employment or negligent supervision then a finding of liability under Art. 2320 above is inconsistent.
In Ermert, supra, it is true our Supreme Court discussed when an act would be considered in the course and scope of employment. But Ermert did not adopt as a test those factors the majority lists as conclusive, which the majority also says was taken from LeBrane v. Lewis, 292 So.2d 216 (La.1974). Ermert says the opposite. When considering questions of employer liability for employees we must consider foreseeability, similar to the foreseeability we consider when we determine whether an intentional tortious act came within the exception to worker's compensation coverage. Ermert also quotes with approval Miller v. Keating, 349 So.2d 265, 269 (La.1977). "Each question of an employer's response in damages for the intentional tort of his employee must be looked at on its own merits to determine whether the conduct is to be regarded as within the scope of the employee's employment."
Nor do I consider LeBrane, supra, supportive of the majority. LeBrane, supra, *577 considered the actions of a supervisor in stabbing a discharged employee and held that the fight was reasonably incidental to the employee's duties in firing the employee and making him leave the premises.
In LeBrane, in Miller, and in Ermert there existed some connection with the intentional criminal act and the employer's business. And each case goes to some pains to point out the connection. But that just cannot be the fact here.
I concede that the question of course and scope of employment is largely one of fact. Ermert emphatically says it is. Ermert also emphasizes that the trial court's findings of fact should not be disregarded unless they are clearly wrong. But in this case, I believe a finding of fact that Stewart's act of rape somehow was in furtherance of the business of Baptist Hospital is clearly wrong.
Other Courts of Appeal have reached different results, but most can be explained as negligent hiring or negligent supervision. This case does not involve either, as the majority apparently concedes; and if those decisions are based on the liability of a non-negligent employer for the intentional criminal acts of an employee, when those acts have no connection whatsoever with the employer's business, then I would decline to follow those decisions.