667 So.2d 1188 (1996)
Tamika PATTERSON
v.
AL COPELAND ENTERPRISES, INC., et al.
No. 95-C-2288.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1996.
Rehearing Denied February 22, 1996.
*1189 Stephen C. Resor, Michael M. Meunier, Bryan J. De Tray, Sullivan, Stolier & Daigle, New Orleans, for Relator.
*1190 Cardell Andrew Thomas, New Orleans, for Plaintiff/Respondent.
Before SCHOTT, C.J., and BYRNES, PLOTKIN, WALTZER and LANDRIEU, JJ.
BYRNES, Judge.
This suit arises from the sexual assault of plaintiff/employee by an assistant manager/supervisor at a fast food restaurant which resulted in a tort action against the employer based on vicarious liability. The employer, America's Favorite Chicken Company ("AFC"), the successor to Al Copeland Enterprises, Inc., seeks a review of the trial court's ruling denying the relator/employer's motion for summary judgment. We reverse and render.
In her petition, plaintiff sought damages from her employer on the grounds of vicarious liability for the acts of its employee.[1] The employer, AFC, moved for summary judgment which was denied by the trial court, and AFC filed this timely writ application.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. LA.C.C.P. art. 966. In general, the burden is on the mover in a summary judgment case to establish no material fact issues exist prior to granting the motion. Landry v. Roberson Advertising Service, Inc., 95-0095 (La.App. 4 Cir. 8/23/95), 660 So.2d 194. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). No summary judgment will be granted even if the court has grave doubts regarding a party's ability to establish disputed facts. Aydell v. Charles Carter & Co., Inc., 388 So.2d 404 (La.App. 1 Cir.), writ denied 391 So.2d 460 (La.1980). The fact that a party is unlikely to prevail at a trial on the merits is an insufficient basis for rendering a summary judgment against that party. Chapeuis v. Cassimano, 568 So.2d 606 (La.App. 4 Cir.), writ denied 571 So.2d 629 (La.1990). This is true no matter how small the chances of the party opposing the motion to ultimately prevail appear to be. Dearie v. Ford Motor Co., 583 So.2d 28 (La.App. 5 Cir.), writ denied 588 So.2d 1117 (La.1991). It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Morris v. Louisiana Coca-Cola Bottling Co., Ltd., 354 So.2d 659 (La.App. 1 Cir.1977). The weighing of conflicting evidence on a material fact has no place in summary judgment procedure. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3 Cir.1974), writ denied 302 So.2d 308 (La.1974). Testimony should neither be received nor considered, even with the consent of counsel, to decide a motion for summary judgment. Urban Management Corp. v. Burns, 427 So.2d 1310 (La.App. 2 Cir.1983); Hemphill v. Strain, 341 So.2d 1186 (La.App. 1 Cir.1976), writ denied 343 So.2d 1072 (La.1977), appeal after remand, 371 So.2d 1179 (La.App. 1 Cir.1979), writ denied 373 So.2d 510 (La.1979). Making evaluations of credibility has no place in determining a summary judgment. Dixie Buick, Inc. v. Lockett, 263 So.2d 56 (La.App. 4 Cir.1972). A motion for a summary judgment is not to be used as a substitute for trial on the merits. Oller v. Sharp Elec., Inc., 451 So.2d 1235, 1237 (La.App. 4 Cir. 1984), writ denied 457 So.2d 1194 (La.1984), appeal after remand 514 So.2d 176 (La.App. 4 Cir.1987), writ denied 519 So.2d 117 (La. 1988).
In the present case the following facts are undisputed: On July 4, 1982, Tamika Patterson, who was sixteen years old at the time, was employed at a Popeye's restaurant in New Orleans. Her supervisor that night was an assistant manager, Desmond Paul Brown. *1191 During the evening Brown counseled Ms. Patterson on proper work etiquette.
When Ms. Patterson finished her double shift on July 5, 1982, she clocked out and waited for her ride outside the restaurant. At approximately 3:00 a.m., Brown asked her to come back inside while he finished some paperwork, after which he indicated that he would drive her home. Once inside, Brown informed the plaintiff that he had to write a report regarding an earlier incident between the plaintiff and a co-worker. Then he made sexual advances and told plaintiff that she would lose her job if she did not cooperate. He finally raped her at knife point. Thereafter, Brown was charged with forcible rape and entered a guilty plea to simple rape.
To determine whether an employer is vicariously liable for the intentional tortious acts of an employee, the following factors are considered: (1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. LeBrane v. Lewis, 292 So.2d 216 (La.1974); Aaron v. New Orleans Riverwalk Ass'n, 580 So.2d 1119 (La.App. 4 Cir.1991), writ denied, 586 So.2d 534 (La.1991).
In Aaron, id., 580 So.2d at 1121, this Court stated:
The law is clear that for any employer to be held vicariously liable for an intentional tort of a co-employee against a co-employee, the tortfeasor/employee must be acting in the course and scope of his employment. L.S.A.-R.S. 23:1032; Tampke v. Findley Adhesives, Inc., 489 So.2d 299 (La.App. 4th Cir.1986), writ denied, 491 So.2d 24 (La.1986); Cazenave v. Pierce, 568 So.2d 1360 (La.App. 4th Cir.1990). In determining whether an employee was acting in the course and scope of his employment, the employee's conduct must be so "closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest." LeBrane v. Lewis, 292 So.2d 216 (La.1974); Johnson v. Dufrene, 433 So.2d 1109, 1112 (La.App. 4th Cir.1983), writ denied, 441 So.2d 765 (La. 1983).
Plaintiff emphasized that in various cases where the perpetrator was placed in a superior position over the victim, the employee committed the sexual assault while on duty in the course of discharging some employment function.
In Applewhite v. City of Baton Rouge, 380 So.2d 119 (La.App. 1 Cir.1979), the City was vicariously liable where the police officer committed a sexual assault while on duty, in uniform, in the police car itself. The officer told three girls they would be arrested for vagrancy if they were not off the street shortly. Later, after letting her two female companions go, the officer forced the nineteen-year-old plaintiff/victim into the car.
In Turner v. State, 494 So.2d 1292 (La. App. 2 Cir.1986), the State was vicariously liable where a recruiter for the National Guard committed sexual battery on the plaintiffs while they were seeking entry into the Guard. The recruiter convinced the women that he was authorized to perform physical examinations when he was not.
In Samuels v. Southern Baptist Hosp., 594 So.2d 571 (La.App. 4 Cir.1992), writ denied 599 So.2d 316 (La.1992), the hospital was vicariously liable when its nursing assistant sexually assaulted a minor psychiatric patient based on the finding that part of his employment duties was to ensure the patient's well being on a locked ward.
In Dismuke v. Quaynor, 25,482 (La.App. 2 Cir. 4/5/94), 637 So.2d 555, writ denied, 94-1183 (La.7/1/94), 639 So.2d 1164, the university was vicariously liable where a counselor committed a sexual assault against a teenage camper attending day camp at Grambling University. In determining that the university was liable for the counselor's intentional acts, the court stated:
The Supreme Court more recently considered the proper test for vicarious liability in Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990). The court reiterated that the finding that an act was within the *1192 course and scope of employment is governed by the manifest error rule. Id., at 475. In Ermert, the tort was the negligent discharge of a shotgun by the president of the corporate defendant, with the result of injuring the plaintiff's foot. The court first held that the rules for determining the liability of the employer for the conduct of both "superior servants" (like a corporate president) and regular employees are essentially the same, although the dissimilarity of their duties and responsibilities must be taken into account. In other words, courts often attempt to determine whether, in light of the authority given to the employee, his tortious conduct was reasonably foreseeable. This foreseeability, however, is "quite different from the `foreseeably unreasonable risk of harm' that spells negligence." Id., at 476. The court explained:
In determining whether a particular accident may be associated with the employer's business enterprise, courts often attempt to determine whether, considering the authority given to the employee, the employee's tortious conduct was reasonably foreseeable. * * *
What is considered reasonably foreseeable in this context, however, is quite different from the "foreseeably unreasonable risk of harm" that spells negligence. Rather than looking for risks that can and should be avoided, the court must essentially decide whether the particular accident is a part of "the more or less inevitable toll of a lawful enterprise." * * *
When considering which risks the employer must bear under vicarious liability, * * * the proper test bears more resemblance to that which limits liability for workers' compensation than to the test for negligence, because the employer should be held to anticipate and allow for risks to the public that "arise out of and in the course of" his employment of labor.
559 So.2d at 476 (citations omitted).
Synthesizing the analysis of Miller v. Keating [349 So.2d 265 (La.1977)] and Austen v. Sherwood, supra, [446 So.2d 274 (La.1984)], the court concluded that because vicarious liability is based on the attribution of business-related risks to the enterprise, specific conduct may be considered within the course and scope of employment even though it is done in part to serve the purposes of the servant or of a third person. Id., at 476-477. [Emphasis in original.] In conclusion, the court held:
The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. [T]he act may be found to be in the service if not only the manner of acting but the act itself is done largely for the servant's purposes.
559 So.2d at 477 (citations omitted, emphasis added).

Dismuke, supra, 25,482 at pp. 6-8, 637 So.2d at 560-61.
In Fallon v. Sullivan, 94-CA-1927 (La. App. 4 Cir. 2/23/95), 650 So.2d 1232, writ denied 95-0769 (La.4/28/95), 653 So.2d 601, this court upheld a summary judgment granted to an employer and found that the tortious conduct of the bartender/employee in setting fire to his employer's premises was not within the scope of his employment.
In LeBrane, supra, the supervisor fired the kitchen worker, escorted him to the office, issued the worker's termination pay, and escorted the worker off the premises. An argument escalated into a fight off the premises, during which the supervisor attacked the kitchen worker with a knife as the worker attempted to flee. The Louisiana Supreme Court found that the dispute was primarily employment rooted in that it was incidental to the performance of the supervisor's duty of firing the employee and escorting him from the premises. The tort was committed within the scope of the supervisor's employment so that the employer was vicariously liable.
The co-employee was not found to be in the course and scope of employment at the time of the assault of a fellow employee in *1193 the following cases: Barto v. Franchise Enterprises, Inc., 588 So.2d 1353 (La.App. 2 Cir.1991), writ denied, 591 So.2d 708 (La. 1992); Mays v. Pico Finance Co. Inc., 339 So.2d 382 (La.App. 2 Cir.1976), writ denied, 341 So.2d 1123 (La.1977); Tampke v. Findley Adhesives, Inc., 489 So.2d 299 (La.App. 4 Cir.1986), writ denied 491 So.2d 24 (La.1986); Francioni v. Rault, 570 So.2d 36 (La.App. 4 Cir.1990), writ denied, 575 So.2d 371 (La. 1991); and Aaron v. New Orleans Riverwalk Ass'n, 580 So.2d 1119 (La.App. 4 Cir.1991), writ denied 586 So.2d 534 (La.1991).
In Barto, supra, at a fast-food restaurant when the supervisor questioned the cook about money missing from the office, the cook beat and stabbed the supervisor. The appellate court reversed the trial court's ruling and granted summary judgment based on the undisputed evidence that the perpetrator's attack was not related to any of his employment duties, did not further his employer's objectives, was not a risk of harm fairly attributable to his employer's business, and was done for purely personal considerations entirely extraneous to his employer's interest so that the intentional acts were not done in the course and scope of the cook's employment.
In Mays, supra, the appellate court affirmed the jury finding that the assistant manager was not acting in the scope of his employment when he raped a job applicant in a motel after he offered the applicant a ride to another city for a job interview with the manager. The appellate court noted that the harm plaintiff suffered could not have been foreseen, and the employer was not vicariously liable for the intentional acts of its employee.
In Tampke, supra, the trial court directed a verdict in favor of the employers and their insurer, because the truck driver was not acting in the scope of employment when he killed the plant manager co-employee after a heated discussion concerning a hit and run accident in which the truck driver was involved the previous day. During the discussion, the plant manager stated that the truck driver was "finished." This court affirmed the directed verdict and found that the truck driver's assault did not benefit the employer's business, could not be regarded as a risk of harm fairly attributable to the employer's business, and was clearly motivated by the truck driver's own personal motives so that the employer was not vicariously liable.
In Francioni, supra, this court affirmed the trial court's ruling which granted summary judgment and dismissed the tort claim against the employer and its insurer. In that case the victim, a clerk-typist and the tort-feasor, an assistant comptroller, were employed together in an accounting office. The victim drove the tort-feasor to the University of New Orleans for an accounting review course. The victim's body was found several hours later in New Orleans East. Plaintiffs argued that the perpetrator raped and murdered the victim because the victim discovered that the perpetrator was embezzling funds from the employer. This court found that the murderer's function as an accountant did not entail embezzlement. The tort-feasor's conduct was not so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business. The tort-feasor's conduct clearly was motivated by purely personal considerations entirely extraneous to the employer's interests.
In Ermert v. Hartford Ins. Co., 559 So.2d 467, 477 (La.1990), the Louisiana Supreme Court emphasized that: "The scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks." Further the Louisiana Supreme Court noted that: "The mission and authority which a legal entity such as a corporation must be presumed to have given its chief executive officer and top human functionary is certainly much broader than that which an employer generally is likely to give or have given lower echelon employees." Id. In that case, the president as chief executive officer, majority stock holder, and primary business generator of a closely held corporate business accidentally discharged his gun and shot the plaintiff, a guest, in the plaintiff's foot at a hunting camp, which was used for the entertainment of customers and employees. The Louisiana Supreme Court *1194 found that the trial court's conclusion that the president was within the scope of his employment was not manifestly erroneous or clearly wrong. The Supreme Court reiterated: "Each question of an employer's response in damages for the intentional torts of his employee must be looked at on its own merits to determine whether the conduct is to be regarded as within the scope of the employee's employment...." Id. Limited to those facts, recovery based on vicarious liability was determined by the amount of authority or control held by the chief executive. Since the chief executive is the party primarily responsible for setting the policies of the company, it is much easier to argue that the actions of the chief executive represent the policy of the company, and therefore may be considered to have been done in the course and scope of employment.
In the present case the malefactor does not have such a clear position of authority and connection to the corporate business as demonstrated in Ermert. There is no obvious foreseeability to the risk of sexual assault by one employee against another nor is such criminal behavior foreseeable as an inevitable toll of the business of a fast-food restaurant.
Employers cannot be held vicariously liable for the actions of their employees solely by virtue of an employee relationship, but vicarious liability is based on the finding that the employee/tort-feasor acted within the course and scope of his employment. In the present case the trial court emphasized that it ruled against the employer for policy reasons because the crime was against a minor. The age of the employee is not one of the factors used to determine whether an incident occurred in the course and scope of employment.
Applying the law as discussed above to the facts in the present case as conceded to the plaintiff for purposes of argument, as a matter of law Brown was not acting in the course and scope of employment when he raped the plaintiff. Although the criminal act occurred on the employer's premises after working hours, the sexual assault was not related to Brown's employment duties, did not further his employer's objectives, was not a risk of harm fairly attributable to his employer's business, and was done for purely personal considerations entirely extraneous to his employer's interest. AFC is not vicariously liable for Brown's sexual assault on the plaintiff.
Accordingly, there are no genuine issues of material fact so that AFC is entitled to summary judgment as a matter of law. The trial court's ruling is reversed, AFC's motion for summary judgment is granted, and the case against AFC is dismissed with prejudice.
REVERSED & RENDERED.
SCHOTT, C.J., concurs.
PLOTKIN, J., dissents.
SCHOTT, Chief Judge, concurring:
Employers are answerable for the damage occasioned by their employees in the exercise of the functions in which they are employed. LSA-C.C. art. 2320. This simple statement of our basic civilian tort law has been unduly complicated by our courts.
In this case Desmond Brown was employed by Popeye's as a supervisor. His job functions did not include sexual advances upon and rape of subordinate employees. These are criminal acts for which the employer should not be liable unless he committed some independent act of negligence such as negligent hiring of a criminal.
LeBrane v. Lewis, 292 So.2d 216 (La.1974) is easily distinguishable on its facts. The assault in that case grew out of a heated argument between the employees. The argument was directly related to the discharge of the victim-employee by the supervisor. The termination was one of the supervisor's employment functions.
That case cannot be remotely analogized to the instant case where the supervisor, for his own personal gratification, made sexual advances on his subordinate and raped her.
Samuels v. Southern Baptist Hospital, 594 So.2d 571 (La.App. 4th Cir.1992), is also easily distinguishable from the present case. There a nursing assistant assaulted and raped a female patient in the psychiatric unit of the hospital which employed him. His *1195 principal employment function was to provide health care to patients. Instead of doing that he assaulted the patient. His criminal conduct occurred simultaneously with his employment functions. Furthermore, while the majority of the panel in the Samuels case correctly stated the law they incorrectly applied the law to the facts of that case as the dissenting judge pointed out. In any event the job relationship between the victim and the perpetrator in Samuels and the circumstances surrounding the assault were altogether different than those of the present case.
PLOTKIN, Judge, dissenting.
I respectfully dissent from the rendering of summary judgment in favor of the employer. I do not agree with the majority that, as a matter of law, the supervisor was not acting in the course and scope of his employment when he raped the employee he supervised.
In LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974), the Louisiana Supreme Court held that a fight between a supervisor and an employee who was being terminated was reasonably incidental to the supervisor's duties, stating (footnote omitted):
In short, the tortious conduct of the supervisor was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests. It can thus be regarded as within the scope of the supervisor's employment, so that his employer is liable in tort to third persons injured thereby."
In Francioni v. Rault, 570 So.2d 36, 38 (La. App. 4th Cir.1990), writ denied, 575 So.2d 371 (La.1991), this Court affirmed a summary judgment dismissing an employer from a wrongful death action when one employee killed another, distinguishing LeBrane:
The tortious conduct involved herein occurred entirely outside of the employment premises and working hours.
. . . .
More important than the time and location of the acts is the fact that, at the time of the murder, Rault was not in the course of carrying out his employment duties.
In Samuels v. Southern Baptist Hosp., 594 So.2d 571, 574 (La.App. 4th Cir.1992), this Court held an employer vicariously liable for its employee's rape of a patient, stating:
The tortious conduct committed by Stewart was reasonably incidental to the performance of his duties as a nurse's assistant although totally unauthorized by the employer and motivated by the employee's personal interest. Further, Stewart's actions were closely connected to his employment duties so that the risk of harm faced by the young female victim was fairly attributable to his employer, who placed the employee in his capacity as a nurse's assistant and in a position of authority and contact with the victim.
In contrast with Francioni, in the instant case the plaintiff, a sixteen year old girl, was raped by her supervisor on the business premises after her shift had ended but while the supervisor was still working, and immediately after her supervisor had called her into his office for work-related reasons. The tortious conduct of the supervisor was closely related in time, place, and causation to his employment duties. Unlike the majority, I do not find Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990), which defined the extent of vicarious liability of a corporation for the actions of its corporate president, to be dispositive. Instead, I would find, consistent with Samuels, supra, that the risk of harm faced by the young female employee was fairly attributable to the employer who placed the supervisor in a position of authority and contact with the victim.
Accordingly, I would find no error in the trial judge's refusal to grant summary judgment because there are genuine issues of material fact and the employer is not entitled to judgment as a matter of law, and I would deny the writ.
NOTES
[1] Ms. Patterson also sued a security company for failing to protect her. That defendant subsequently settled.