485 So.2d 965 (1986)
Consuela Moses, Widow of Leroyal HARRIS, Individually and as the Natural Tutrix of Leroyal Harris, Jr., Tacia Harris and Kendall Harris, Minor Children of the Deceased, Leroyal Harris
v.
SEARS, ROEBUCK & COMPANY.
No. 85-CA-623.
Court of Appeal of Louisiana, Fifth Circuit.
March 10, 1986.
Writ Denied May 12, 1986.
James A. Babst, Dona J. Dew, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for defendant-appellant.
Gregory W. Roniger, Jefferson, for plaintiff-appellee.
Before CHEHARDY, GRISBAUM and WICKER, JJ.
GRISBAUM, Judge.
This appeal arises from the plaintiff's decedent's worker's compensation claim for benefits. From a judgment finding compensation *966 coverage, the defendant appeals.
We affirm.
ISSUES
We are called upon to determine two issues:
(1) Whether the trial court erred in granting a motion for new trial submitted prior to its signing the initial judgment and
(2) Whether the trial court was "clearly wrong" in its finding that the plaintiff's decedent's compensation claim for benefits, at the time of his death, was within the ambit of worker's compensation coverage as defined by La.R.S. 23:1031.
FACTS
The record shows the plaintiff's decedent, Mr. Leroyal Harris, Sr., reported for work at Sears' warehouse on Whitney Avenue on May 3, 1978. By 10 or 10:30 a.m., the warehouse floor area was covered by 14 to 16 inches of standing water; the office area, by 6 to 8 inches. The employees, in the wake of continuing heavy rain, were told they could leave. During the day, water rose as high as the glove compartments of cars parked in the Sears parking lot. Mr. Harris did not leave when he first learned he might but waited around a bit to see what the rain would do. Only after the building was completely flooded did he elect to leave. Mrs. Deanna Horne, Mr. Harris' clerical supervisor, testified that he indicated he was very nervous, that he was going home to his family, that there was some problem at home, and that, despite Mrs. Horne's advising him to wait at least until some Sears repair technicians who were pushing cars to higher ground returned so that they might push him out, Mr. Harris left. Mr. Harris drove his vehicle from the Sears parking lot and down Whitney Boulevard. Within a block of the Sears building, the vehicle began to float and was swept into the Whitney Canal. Mr. Harris crawled atop the vehicle and the Sears technicians, Mr. Alan Sekinger and Mr. Glenn Steib, who had returned from pushing a car, tried to rescue him, but unsuccessfully. He was sucked into a culvert and drowned.
From a procedural standpoint, we note the trial on the merits was held on January 28, 1985, at the close of which the court orally gave judgment for the defendant. On February 4, 1985 (according to the brief for defendant-appellant), the court signed a written judgment in accord with the oral decree (this judgment not being part of our record). The record shows that, prior to the signing of the elusive judgment, appellee, on February 1, 1985, filed a motion for a new trial (limited to reargument). The court signed the attached show cause order that same day. A hearing was held on March 13, 1985, and a judgment in favor of the plaintiff was signed on Arpil 16, 1985. The defendant thereafter moved for appeal on May 9 and filed a suspensive appeal bond on May 10, 1985.
ANALYSIS
Initially, the appellant contends the motion for the new trial by the appellee was premature since it was presented prior to judgment. Accordingly, the initial judgment of February 4 (which was in favor of appellant, Sears) and which is not part of this record, should stand. We disagree.
We adopt the rationale expressed by our fellow Third Circuit in Jeanmard v. Sears, Roebuck and Co., 436 So.2d 575, 576 (La. App. 3d Cir.1983), which states:
The Supreme Court in U.S. Fire Insurance Company v. Swann, 424 So.2d 240 recently stated: "First of all there is the philosophy underlying the Code of Civil Procedure, as stated by Henry G. McMahon, coordinator of the Code of Civil Procedure [,] in the introduction to the Code:
The new code embodies procedural rules designed to permit the trial of a case to serve as a search for the truth, and to have its decision based on the substantive law applicable, rather than upon technical rules of procedure.
This procedural philosophy is embodied in La.C.C.P. art. 5051, which provides:
The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves.

*967 In recognition of the fact that procedural rules are merely to implement the substantive law, as well as the fact that appeals are constitutionally guaranteed (La. Const. art. V, § 5(F) and § 10), this Court has consistently held that Appeal are favored in the law and should be maintained unless a legal ground for dismissal is clearly shown. An appeal is not to be dismissed for a mere technicality. Davidge v. Magliola, 346 So.2d 177 (La. 1977); Howard v. Hardware Mutual Company, 286 So.2d 334 (La. 1973); Louisiana Power and Light Company v. Lasseigne, 255 La. 579, 232 So.2d 278 ([La.] 1970); Favrot v. Favrot, 252 La. 192, 210 So.2d 316 ([La.] 1968); Kirkeby-Natus Corporation v. Campbell, 250 La. 868, 199 So.2d 904 ([La.] 1967). Unless the ground urged for dismissal is free from doubt, the appeal should be maintained. Gulf States Utilities Co. v. Dixie Electric Membership Corp., 248 La. 458, 179 So.2d 637 (La.1965); Emmons v. Agricultural Ins. Co., 245 La. 411, 158 So.2d 594 (La.1963).
To the same effect is the recently expressed practical holding of our fellow First Circuit in Hanson v. Perkins, 484 So.2d 705 (1st Cir.1985). In disposing of a motion to dismiss, the Court reasons that the technical prematurity of a motion for new trial which was filed before the signing of a judgment is cured by the signing of the judgment, the motion becoming effective on the date of the signing. Therefore, the appellant's argument has no merit.
As to the merits, we note the trial court, in its reasons for judgment, carefully states:
This Court is of the opinion that plaintiff's claim falls within the ambit of the Workmen's Compensation Act primarily in light of the Louisiana Supreme Court holding in Edwards v. Louisiana Forestry Commission [221 La. 818], 60 So.2d 449 (La.1952), which states:
... no more is necessary than that the work subject the employee to a peril which comes from the fact that he is required to be in the place where it strikes when it does so. It is immaterial whether the place is the employer's premises or a street; whether the risk arises from physical features or human agencies connected with the place; whether it is a common occurrence or an extraordinary happening; one which threatens only employees at work or others also.
Id., at 451 (citing Hartford Accident & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, 15, certiorari denied by the United States Supreme Court, 309 U.S. 689, 60 S.Ct. 891, 84 L.Ed. 1032). Furthermore, the United States Supreme Court in O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470 [95 L.Ed. 483] (1951) held that
[t]he test of recovery is not a causal relation between the nature of employment of the injured person and the accident.... Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the "obligations or conditions" of employment create the "zone of special danger" out of which the injury arose.... A reasonable rescue attempt, like pursuit in aid of an officer making an arrest, may be "one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute." (Citations omitted).
Id., 340 U.S. at 506, 507, 71 S.Ct. at 471, 472. Lastly, as Justice Sutherland stated in Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 154, [68 L.Ed. 366], "whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case."
This Court is of the opinion that it was foreseeable on the part of Sears that certain of its employees would be injured as a result of the flooding which was invading the Sears premises and surrounding areas, the "zone of the special *968 danger" referred to in O'Leary, supra. The mere fact that some Sears employees remained on the premises while others chose to leave did not reduce or diminish the zone of danger created by the torrential rain. This Court opines that had decedent not been working for Sears on the date of the flood (the "obligations or special conditions of employment", O'Leary, supra [sic]), he probably would not have been on or near the Sears premises at the time of the flood and not have subjected himself to the hazards created by the severe flooding. Moreover, this Court is of the opinion that the legislative intent behind the Workmen's Compensation Act was to provide coverage to those employees who were exposed to risks as a result of their employment. This Court acknowledges that the evidence shows decedent was probably attempting to go home after being allowed to do so by his supervisor; however, had the decedent not been allowed to leave, he might not have drowned. Also, in view of the fact that other Sears employees were helping those attempting to leave (some employees were guided on foot to a hotel) or move their vehicles to safer ground and that these helping employees, [sic] were still "working" for Sears, the actions of those employees, by literally going beyond the Sears premises to help others, constituted an extension of those premises. Therefore, it can be said that decedent died "on Sears premises". Had decedent attempted to leave the premises but risked his life to help another in distress, there would be no doubt that Workmen's Compensation coverage would be afforded to decedent's family. And so, when decedent attempted to save his own life, this Court should not equitably deny coverage when only the bare fact that decedent was not trying to save the life of another distinguishes this situation from the one alluded to above.
In sum, this Court adopts the concept espoused by the Louisiana Supreme Court in Lester v. Southern Casualty Insurance Co., 466 So.2d 25 (La.1985), which holds that
... it is well[-]settled that the provisions of the Worker's Compensation Law must be given a liberal interpretation in order to effectuate its beneficient purpose of relieving workmen of the economic burden of work[-]connected injuries by diffusing the cost in the channels of commerce. (Citations omitted).

Id., at 28.
While we entertain reservations as to some aspects of the trial court's rationale, we agree with the conclusion reached. As the court indicates, the Worker's Compensation Law must be accorded a liberal interpretation. The Compensation requirement that an employee have received "personal injury by accident arising out of and in the course of his employment," La.R.S. 23:1031, defines an ambit of liability broader than that of both the common law and Louisiana tort formulations of "scope of employment." Edwards v. La. Forrestry Comm'n, 221 La. 818, 60 So.2d 449, 451 (1952); Harris v. Hymel Store Co., 200 So.2d 84, 87 (La.App. 1st Cir.1967), writ denied, 202 So.2d 657 (La.1967). Under principles of Compensation, nexus as much as cause is pertinent to ascertaining liability. As the United States Supreme Court early observed,
The test of recovery is not a causal relation between the nature of the employment of the injured person and the accident * * *. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the "obligations or conditions" of employment create the "zone of special danger" out of which the injury arose.

O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 471 95 L.Ed. 483 (1951), cited in Edwards, supra, at 451. (Punctuation and italics as in Edwards.)
Predictably, the legal evaluation of nexus has evolved into a formulaic analysis, which nonetheless is tempered by the caution that each case must be decided on its *969 own facts, that phrases alone cannot be dispositive of each succeeding set of facts. Edwards, supra at 450; Lisonbee v. Chicago Mill & Lumber Co., 278 So.2d 5, 7 (La.1973); Jackson v. Am. Ins. Co., 404 So.2d 218, 220 (La.1981). The phrases "arising out of" and "in the course of" are interpreted to mandate separate inquiries as to the connexity between the accident and the employment. Lisonbee, supra, passism; Gorings v. Edwards, 222 So.2d 530 (La.App. 4th Cir.1969). "In the course of" mandates a query into the time and place nexus between the risk encountered and the employment. "Arising out of" requires a more abstract query into the character or origin of the risk. "To `arise out of the employment, the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. Time, place and circumstance must determine this." Lisonbee at 9.
The inquiries into nexus generate the general jurisprudential rule that "ordinarily, an employee injured while going to or returning from work is not entitled to compensation because the injuries are considered as not arising during the course of the employment." Thomas v. RPM Corp., 449 So.2d 18, 20 (La.App. 1st Cir.1984), writ denied, 450 So.2d 965 (La.1984); Thomasee v. Liberty Mutual Ins. Co., 385 So.2d 1219, 1221 (La.App. 3d Cir.1980), writ denied, 392 So.2d 675 (La.1980); Templet v. Intracoastal Truck Line, Inc., 255 La. 193, 230 So.2d 74, 77 (1969). In Templet, Justice McCaleb indicates that this rule is premised on the employer's lack of supervision and control over the employee at such times. "Therefore," he concludes, "any extension of coverage [to such times] ... must necessarily be founded on the existence of conditions surrounding the locality of the employment which makes it more hazardous to the employee than it would have been had he not been employed." Id. at 77.
The exception broached by Justice McCaleb has come to be termed the threshold doctrine. Most classically, the doctrine means that the worker who, en route to or from his workplace, rudely encounters a train on tracks situated just beyond the main gates of his employer's factory will be covered by compensation anyhow. Likewise, the employee who manages safely to leave the premises only then to be singed by embers belched from his employer's chimneys. The doctrine as explicated in Templet, supra, requires both (1) a distinctive travel risk for the employee in going to or coming from work and (2) this risk's existing in an area immediately adjacent to his place of work. Templet at 80.
In its Reasons for Judgment, quoted above, the trial court relies in part on the threshold doctrine, finding that Mr. Harris was subjected to an elevated flood hazard by virtue of his employment, such hazard being indeed proximate to the place of employment and enveloping the only route of escape therefrom. While we find this reasoning persuasive and, by analogy, instructive as to the proper result, we conclude that the direct application of the threshold doctrine to these facts is unnecessary. The hazard to which Mr. Harris ultimately succumbedthe flooding presented itself at his place of employment during the time of employment. It follows elementarily, then, that this hazard arose out of and in the course of the employment. The nexus is established notwithstanding that the cause proper devolved from an act of God.
We need, then, only ascertain whether the accident also arose out of and in the course of Mr. Harris' employment. In this context, the defense counsel makes much of the fact that Mr. Harris was no longer on Sears' premises at the time of the accident and was, in fact, probably en route home. Also emphasized is that some employees chose to weather the storm and safely did so by remaining in the Sears warehouse abandoned by Mr. Harris. While these facts are pertinent, collectively they in no manner undercut the conclusion of the trial court. While Mr. Harris had managed safely to exit Sears' parking lot, he clearly had not yet escaped the hazard *970 that had presented itself at his workplace and prompted his departure. Given more time, more distance, more opportunity for the intervention of Mr. Harris' conscious and volitional choice of route, our decision might be different. Here, however, Mr. Harris had left the parking lot by the only available exit and drowned less than a block from his employment premises. That others remained and survived is not determinative: still others sought refuge in a nearby hotel. Mr. Harris is not charged with the omniscient proactive operation of otherwise mortal hindsight. Nor dispositive is that Mr. Harris left probably intending to go home. Confronted with rising flood waters and construing in their wake the need to leave, Mr. Harris of necessity had to go somewhere else. That he chose home in no manner militates against the work-related nature of the hazard from which he fled or of the accident that claimed his life. The accident, arising in such an infinitesimally attenuated context from a hazard that clearly arose out of and in the course of employment, itself possesses sufficient nexus with the employment to produce worker's compensation liability.
Finally, in addition to the above rationale, our standard for review requires us to give great weight to the trial court's factual findings as to the work-related nature of an accident. These findings should not be disturbed where there is evidence before the trier of fact which, upon the latter's reasonable evaluation of credibility, furnishes a reasonable, factual basis for the trial court's finding, unless such finding is clearly wrong. Crump v. Hartford Acc. and Indemnity Co., 367 So.2d 300, 301-02 (La.1979). Accordingly, after a careful reading of the record, we cannot say the trial court did not have a reasonable, factual basis for its factual conclusions, nor can we say its findings are clearly wrong.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.