# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 13-581

**DEREK LEMAIRE**

**VERSUS**

**DAVID RICHARD, ET AL.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20091231
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.

**REVERSED AND REMANDED.**

**Gregory Kent Moroux**
**Onebane Law Firm**
**P. O. Box 3507**
**Lafayette, LA 70502-3507**
**(337) 237-2660**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Dave's Gun Shop**
    **David Richard**
    **Linda Richard**

**James Kirk Piccione**
**Piccione & Piccione**
**P. O. Box 3029**
**Lafayette, LA 70502**
**(337) 233-9030**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Jeremiah Deare**

**Charles William Ziegler  IV**
**Attorney at Law**
**P. O. Box 53513**
**Lafayette, LA 70505-3513**
**(337) 234-1100**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Derek Lemaire**

**SAUNDERS, Judge.**

This is a vicarious liability case in which a gun shop manager accidentally discharged his own gun, shooting a customer. The manager's gun discharged as he was disassembling it in order to compare it to the customer's malfunctioning gun, as they were both Glock 19 pistols. The customer sustained a gunshot wound on the right side of his chest, and he filed suit against the manager, the gun shop owner, and the lessor of the property for damages arising from this injury. The lessor was dismissed from the suit, and the manager reached a settlement. After a bench trial on the issue of the shop's liability, the trial court ruled in favor of the shop, finding no vicarious liability. The plaintiff appeals. For the reasons discussed herein, we reverse and remand.

FACTS AND PROCEDURAL HISTORY

Plaintiff, Derek Lemaire (hereinafter "Lemaire"), purchased a gun from defendants, Dave Richard and Linda Richard d/b/a Dave's Gun Shop (hereinafter "the shop"). Shortly thereafter, the gun jammed. Lemaire contacted the manager of Dave's Gun Shop, Jeremiah Deare (hereinafter "Deare") on November 10, 2008, regarding the problem. Deare invited him to bring the gun to the shop for inspection. Deare testified that "we said bring it by. We can take a look at it and see if there's anything---I mean, you can look at something, 'Oh, yes. That piece is broken.' If there was nothing obvious about it, we don't do repairs so we would send it back to the factory for him."

Lemaire arrived at the shop sometime around 7:00 p.m. that evening. Although each parking space in the lot is available to customers of any store in the shopping center, Lemaire parked his truck directly in front of the gun shop. The shop's hours are 9:00 a.m. to 6:00 p.m. The parties disputed the frequency with which the shop stays open after hours, but there is no dispute that the door was

unlocked at the time Lemaire arrived. Another customer was present in the shop, talking to Deare. Dave Richard, the shop's owner (hereinafter "Richard"), was present as well, working on inventory. Lemaire waited for Deare to finish with the other customer before discussing his gun.

After that, Deare's testimony conflicts with that of Lemaire. Lemaire testified that he did not initially bring the gun into the shop because "I never bring a loaded weapon into a shop until I tell someone. There's no sign on the door to say, 'Leave your gun unloaded,' like some gun shops, but just to be safe." He testified that as he was leaving the shop to retrieve his gun from his truck and bring it back to the shop, Deare followed him out to the parking lot to assist him, at which point the incident occurred.

In contrast, Deare testified that Lemaire retrieved the gun from his truck and brought it back inside the store, at which point "[w]e ran through a couple of possibilities of what it was. We offered to send it back. That offer was refused. If I remember correctly, it was, 'I'll keep shooting and see if it fixes itself.'" Deare later testified that they disassembled the gun in the shop but were not able to determine why it was malfunctioning. Deare testified that at that point, Lemaire left the shop with the gun, having refused to send the gun back to Glock, its manufacturer. Deare testified that he left as well, locking up the shop for the night and walking out to the parking lot, where the incident then occurred.

A police report by investigating detective Glenn Landry states that after being *Mirandized*, Deare told the detective that he walked outside to the parking lot, where he saw Lemaire, who then began discussing the jamming problem. The report states that this conversation led to disassembling Deare's gun and thus the shooting incident in the parking lot. Nowhere does the report mention Lemaire ever entering the shop that night.

2

Richard testified that he did not speak to Lemaire that night, although he saw Lemaire enter the shop and then leave with Deare. There is also conflicting testimony as to whether Deare locked the door on his way out to the parking lot. Richard testified that he saw Deare lock the door on his way out and believed he was leaving for the night. Deare's testimony is similar. Lemaire testified that Deare did not lock the door when he followed Lemaire outside because they intended to return to the shop.

Two police officers who were the first to arrive on the scene testified at trial that the lights were on in Dave's Gun Shop. One of them, Sergeant Paul Matte, testified that the shop door was not locked:

Q: When you went into Dave's, did Dave come out before you went into Dave's Gun Shop?

A: No, sir.

Q: When you went into Dave' Gun Shop, was the door locked?

A: No, sir.

Q: So you went in and met Dave inside?

A: Yes, sir.

Deare testified that he did not unlock the shop door after the shooting. Richard testified that he was not aware of the incident until police arrived and he saw flashing lights outside, at which point he unlocked the door to exit the shop and see what was going on.

Deare testified that in going outside with Lemaire he intended to say goodbye to Lemaire and leave for the day; then once outside, it occurred to him that he could compare Lemaire's gun to his own. Lemaire testified that Deare was accompanying him to retrieve the gun out of customer courtesy.

Deare and Lemaire then met at Lemaire's truck, which was still parked outside the shop. Deare told Lemaire he was going to take a look at his own gun to compare it to Lemaire's, or to remove the slide from his own gun and test it in Lemaire's. Lemaire heard Deare remove his own gun from its holster. Lemaire began packing his gun into its case in the back seat of his truck. Lemaire testified that Deare never touched the gun Lemaire brought in; Deare touched only his own gun. Deare testified, rather, that "I took his apart and we put his back together, and it was in the truck," clarifying later that he disassembled Lemaire's gun on the passenger side front seat of Lemaire's truck. Deare testified that he saw no parts broken and did not see an obvious cause of malfunction in Lemaire's gun. Deare testified at his deposition that he then wanted to look at his own gun to compare it to Lemaire's in order to identify a source of malfunction "to warrant sending it back to Glock." As Deare was disassembling his own gun, which requires pulling the trigger, Lemaire came around either the corner of his truck or around its open back door (Deare testified the former, Lemaire the latter). As he did, Deare's gun accidentally discharged, shooting Lemaire in the chest. Deare agrees that he shot Lemaire.

Deare testified that he was comparing the two guns "as a friend." Lemaire testified that he was Deare's friend "at the gun shop for sales purposes and stuff," and that they spent time together outside the gun shop once, eating at a restaurant with an additional friend. Lemaire stated that his entire conversation with Deare on November 10, 2008, was about the problems with his gun.

Deare also testified that the shop normally covers shipping fees to send a gun it has sold back to Glock for inspection or repair, and that Glock then covers repair costs for its products. Deare testified that his duties included sales, taking care of the other employees, and "mak[ing] sure things got done and things were

4

done in a timely fashion." Deare also took phone calls, which Richard cannot do because he is deaf. Deare testified that he does not have a federal firearms license that authorizes parties to purchase and resell guns, but that the shop was licensed: "In order to become a gun shop and sell this as ATF spec, you have to have a federal firearms license. That's like a person who works for Academy. The eighteen-year-old kid that works behind the counter doesn't possess one. He sells guns for Academy. I sell guns for Dave's Gun Shop." Richard confirmed that Deare is the manager of the shop and is an hourly employee.

Lemaire filed suit against Deare and against the shop for damages, alleging that the shop was vicariously liable for Deare's tortious act. Lemaire also filed suit against the owner of the shopping center in which the shop is located. The shopping center owner filed a motion for summary judgment, which was granted. Deare reached a settlement with Lemaire and was dismissed as well.

Lemaire filed a motion for summary judgment on the issue of the shop's vicarious liability. The shop opposed the motion and filed a cross motion for summary judgment, arguing the shop was not vicariously liable. The trial court denied both motions after a hearing. Lemaire filed a second motion for summary judgment. The trial court granted the store's motion to strike, finding Lemaire's second motion for summary judgment was moot.

At a bench trial on the issue of the shop's liability, the trial court ruled in favor of the shop. To determine whether the shop was vicariously liable for Deare's action, the trial court applied the four-factor test set forth in *LeBrane v. Lewis*, 292 So.2d 216 (La.1974), and summarized in *Edmond v. Pathfinder Energy Services, Inc.*, 11-151 (La.App. 3 Cir. 9/21/11), 73 So.3d 424, *writ denied*, 11-2234 (La. 12/16/11), 76 So.3d 1204. These factors are: (1) whether the tortious act was primarily employment rooted; (2) whether the act was reasonably incidental to the

performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether the act occurred during the hours of employment. *Id.*

As to the first factor, whether the tortious act was primarily employment rooted, the trial court stated in its oral reasons for judgment: "I frankly, am not really sure what the tortious act was primarily rooted in." The court explained this was in part because it found the testimony of both Lemaire and Deare to be less than completely credible. However, the court further opined, "I think that the tortious act was primarily employment rooted. We do have that factor because I don't think it would have happened if [Deare] did not work at Dave's Gun Shop."

As to the second factor, whether the act was reasonably incidental to the performance of the employee's duties, the trial court opined that, because repairs were not part of Deare's duties, and he was actually forbidden from attempting a repair, this factor was not met. Furthermore, the trial court believed that Deare and Lemaire, knowing that Richard had forbidden employees from inspecting weapons pursuant to the shop's "no repairs" policy, decided to instead inspect the weapon in the parking lot, where Richard would not see them. In stepping out of the store into the parking lot in order to perform an action he was not to perform under his duties as an employee, Deare left his role as an employee of the shop and entered his role as Lemaire's friend, helping him with his gun, the trial court surmised. Deare's act of shooting Lemaire "was not reasonably incidental to his duties because his duties had nothing to do with repairing or inspecting weapons," the court stated.

As to the third factor, whether the act occurred on the employer's premises, the trial court found that the parking lot was not part of the shop's premises: "I cannot find any evidence whatsoever from the testimony or from the lease itself

that the premises of Dave's Gun Shop included any part of the parking lot." The trial court relied on the fact that the parking area is common to all of the businesses in the shopping center in which the shop is located. The court further stated, "If this had occurred inside the shop and Dave Richard could have done nothing to stop it, he still may not be liable for it because it wasn't part of his duties."

As to the fourth factor, whether the act occurred during the hours of employment, the court found that "the store was open for business at the time, at least to Mr. Lemaire." The court opined that whether the shop's door was locked or unlocked did not make a difference.

The trial court recognized that no one factor is dispositive, but weighed the first two factors more heavily: "What is important is whether or not the employee's duties were reasonably incidental to the act and whether or not his tortious act was primarily employment rooted."

The trial court concluded, "I think that this was something [Deare] did on his own." The trial court's final judgment dismissing all claims against the shop was signed and served. Lemaire now appeals the judgment.

ASSIGNMENTS OF ERROR

1. The trial court erred in concluding the shooting was not on the "premises."

2. The trial court erred in concluding the shooting was not incidental to the job duties of the manager of Dave's Gun Shop, who knew Lemaire was returning with a gun he had recently purchased from Dave's Gun Shop because it was malfunctioning.

3. The trial court erred in requesting and persuading the issue of "course and scope" be bifurcated.

7

4. The trial court erred in not finding that the employer was vicariously liable for the acts of his employee.

5. The trial court erred in not finding that the employer was vicariously liable for the acts of his employee under the doctrine of respondeat superior, for among other things, requiring that Deare carry a loaded weapon in the parking lot of Dave's Gun Shop.

6. The trial court erred in not finding Dave Richard d/b/a Dave's Gun Shop liable for the actions of his employee in the parking lot.

LAW AND ANALYSIS

A trial court's determination that an act is or is not "within the course and scope of employment for purposes of vicarious liability is a factual finding governed by the manifest error rule." *Baumeister v. Plunkett*, 95-2270, p. 7 (La. 5/21/96), 673 So.2d 994, 998; *see also Ermert v. Hartford Ins. Co.,* 559 So.2d 467 (La.1990) (finding course and scope to be a mixed question of law and fact held to the manifest error standard).

A court of appeal may not set aside a trial court's finding of fact in the absence of "'manifest error' or unless it is 'clearly wrong.'" *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989). Under the manifest error-clearly wrong standard, this court employs a two-part test for the reversal of a factfinder's determinations. *Stobart v. State Through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). First, this court "must find from the record that a reasonable factual basis does not exist for the finding of the trial court." *Id*. at 882. Second, this court must "determine that the record establishes that the finding is clearly wrong (manifestly erroneous)." *Id*. This test requires this court to review the record in its entirety to determine manifest error. *Id*. This court's determination is not whether the factfinder was correct, but whether the factfinder's conclusion was reasonable. *Id*.

The supreme court further stated in *Stobart*:

Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell v. ESCO,* 549 So.2d 840 (La.1989); *Arceneaux v. Domingue,* 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell,* 549 So.2d at 844-45.

*Id*. at 882.

Lemaire bears the burden to prove that the shop should be held vicariously liable for Deare's tortious act under La.Civ.Code art. 2320, which states, "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed. . . . [R]esponsibility only attaches, when the masters or employers . . . might have prevented the act which caused the damage, and have not done it."

As discussed above, the trial court considers the *LeBrane* factors to determine whether vicariously liability should be imposed: "(1) whether the tortious act was primarily employment rooted; (2) whether the act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment." *Edmond*, 73 So.3d at 426. All four of these factors need not be met in each case to impose vicarious liability, but each factor must be weighed on a case-by-case basis. *Id*.

Put another way, an act is in the course and scope of one's employment if it "is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to

serve the employer." *Orgeron on Behalf of Orgeron v. McDonald,* 93-1353, p. 4 (La. 7/5/94), 639 So.2d 224, 226-27. If the employee's act is "motived by purely personal considerations entirely extraneous to the employer's interests," then vicarious liability shall not be imposed. *Richard v. Hall*, 03-1488, p. 6 (La. 4/23/04), 874 So.2d 131, 138. In *Ermert v. Hartford Ins. Co.*, 559 So.2d 467, 477 (La.1990), the supreme court stated:

> The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. *Miller v. Keating,* 349 So.2d 265, 269 (La.1977); Restatement (2d) of Agency § 236; cf. 1 W. Malone & A. Johnson, supra, § 161, at 309. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. *Austen v. Sherwood, supra; Miller v. Keating, supra; Gilborges v. Wallace,* 78 N.J. 342, 396 A.2d 338 (1978); *Best Steel Bldgs. v. Hardin,* 553 S.W.2d 122 (Tex.Civ.App.1977).

A factfinder must consider the nature of the employer's business at issue in determining whether an act is within the course and scope of one's employment. Vicarious liability "rests not so much on policy grounds consistent with the governing principles of tort law as in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities." *Ermert*, 559 So.2d at 476. "In determining whether a particular accident may be associated with the employer's business enterprise, the court must essentially decide whether the particular accident is a part of the more or less inevitable toll of a lawful enterprise." *Richard*, 874 So.2d at 137-38.

Furthermore, "[t]he scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks." *Id.* at 138. However, "the fact that an act is forbidden or is

10

done in a forbidden manner does not remove that act from the scope of employment." *Ermert*, 559 So.2d at 479 (citations omitted).

In light of the guidance outlined above as applied to the facts of this case set forth in the record, we find that the trial court manifestly erred in finding that Deare's act was not reasonably incidental to the performance of the employee's duties and manifestly erred in finding that the act did not occur on the employer's premises.

The trial court found that the tortious act was primarily employment rooted, and thus the first *LeBrane* factor weighed in favor of vicarious liability. We agree. As the trial court stated, the shooting incident would not have occurred had Deare not been present as an employee at the shop. Because this case is a result of working with guns at a gun shop, the circumstances surrounding the incident are clearly "attributable to the employer's business," and thus the incident was employment rooted. *Lebrane*, 292 So.2d at 218; *see also Edmond*, 73 So.3d 424.

The trial court found that the second *LeBrane* factor---whether the act was reasonably incidental to the performance of the employee's duties---did not weigh in favor of vicarious liability. In reaching its verdict, the trial court relied heavily on its conclusion regarding this factor. The trial court found that the shooting incident was not incidental to Deare's duties because the shop forbid Deare from the type of act he was performing when the incident occurred---inspecting a weapon. Deare's act of shooting Lemaire "was not reasonably incidental to his duties because his duties had nothing to do with repairing or inspecting weapons," the trial court stated. This court notes that there is a distinction between repairing and inspecting a gun, and Deare was not attempting a repair when the shooting incident occurred. In fact, he was not even working on Lemaire's gun; rather, he was disassembling his own gun in order to diagnose the problem with Lemaire's

11

gun. Deare testified that he told Lemaire over the phone that he would attempt to diagnose the problem. This act is therefore clearly within the scope of the work he does at the shop.

In addition, Deare testified that his employment duties include customer service. Testimony by Deare, Lemaire, and Richard all show that Lemaire was a valued, regular customer who had purchased four or five guns from the shop. Importantly, he had purchased the gun at issue from the shop. Also, Deare testified that the shop would pay shipping costs to send the gun back to Glock. It is unreasonable to believe that any act that would prevent this expense for the shop could not be incidental to the duties of the shop's manager.

A factfinder must also consider the nature of the business when determining course and scope. Disassembling a gun in order to compare it to similar merchandise and determine the source of malfunction is clearly of the character and nature of the business at which Deare was employed. Deare was motivated at least in part to help Lemaire because he was a customer of the shop that he managed, which sold Lemaire the malfunctioning gun. The accidental discharge of a weapon during disassembly is characteristic of the activities of a shop which sells guns, regardless of whether the shop repairs guns or employs a gunsmith. Liability for an accident of this kind is an inevitable toll of this type of business, and the shop is subject to vicarious liability for this incident. No other conclusion is reasonable under the facts contained in the record.

In addition, a factfinder must consider the degree of authority given to the employee. Here, the record shows that Lemaire was given a degree of authority in his position as manager that broadened the scope of risks attributable to his acts on behalf of the shop. Richard testified that he saw Lemaire in the shop that night and was aware his gun was having issues. However, no party testified that Richard

12

interacted with or assisted Lemaire that night. Instead, Richard granted Deare the authority to address Lemaire's problem, and in doing so, assumed responsibility for tortious conduct on Deare's part as he acted with such authority. This is the very definition of the doctrine of respondeat superior.

Finally, we note that it is well-established that even when a precise act is forbidden, if the act is sufficiently connected to an employee's work, it may still be reasonably incidental to the performance of an employee's duties. For example, in *LeBrane*, 292 So.2d 216, the supreme court found that a fight that erupted between an employee and the sub-employee he had just fired was reasonably incidental to the performance of the employee's duties, which included hiring and firing sub-employees. There, the act of fighting during which the tort (a stabbing) occurred was clearly forbidden. However, it arose as a result of an employment duty. In the instant case, the forbidden act of disassembling the gun arose out of Deare's employment duty of assisting a customer to determine the best course of action for a malfunctioning gun. The trial court's reasoning is clearly at odds with this well-established aspect of vicarious liability. Accordingly, the trial court's conclusion that an employee of the shop disassembling a Glock of the same caliber in order to determine why the shop's own merchandise was malfunctioning for a valued customer is not incidental to his employment duties is clearly wrong and manifestly erroneous.

The trial court found that the third *LeBrane* factor---whether the act occurred on the employer's premises---did not weigh in favor of vicarious liability. This court finds that the trial court manifestly erred in finding that the incident at issue did not occur on the shop's premises.

In *Davis v. Green*, 44,033 (La.App. 2 Cir. 2/25/09), 5 So.3d 291, *writ denied*, 09-984 (La. 6/19/09), 10 So.3d 742, the court found that an employer's parking lot

could be considered the premises. In that case, an off-duty Wal-Mart associate was involved in a car accident in the Wal-Mart parking lot. Although the court ultimately concluded the employer was not vicariously liable for the associate's tort, it noted that an incident occurring in the employer's parking lot could satisfy the "place element" of the *LeBrane* test. The court based its result heavily on the fact that the employee was traveling in her car, easily distinguishable from the facts of the instant case, where the car was parked.

In *Harris v. Sears, Roebuck & Co.*, 485 So.2d 965, 968 (La.App. 5 Cir.) *writ denied*, 488 So.2d 205 (La.1986), the court found that the circumstances effectively extended the employer's premises to the road a block from the employer's building, for the similar purpose of worker's compensation coverage. The facts in *Harris* state that the warehouse at which plaintiff's decedent was employed flooded during a heavy rain storm. The decedent left work because of the flood, and when he was in his car about a block from the warehouse, his car was swept away by water. Two other employees attempted to rescue him, but their efforts were unsuccessful and he drowned. The court found this incident to be covered by worker's compensation. In analyzing the "place" component, the court found that the employees who attempted to rescue him were still "working" for Sears, and "by literally going beyond the Sears premises to help others, constituted an extension of those premises. Therefore, it can be said that decedent died 'on Sears premises.'" *Id.* at 968. The court further reasoned, "While [decedent] had managed safely to exit Sears' parking lot, he clearly had not yet escaped the hazard that had presented itself at his workplace and prompted his departure." *Id.* at 969-70.

In the instant case, Deare and Lemaire were mere feet from the shop's door when the incident occurred. Both men were present in connection with the gun

shop. As the trial court noted, the parking lot is shared between several shops, with no parking spots devoted solely to any one shop. Their activities in the parking lot were an extension of their continuing endeavor to determine why the gun was malfunctioning. In fact, the act that took place in the parking lot, attempting to determine the problem with the malfunctioning gun, was scheduled and planned over the phone when Lemaire called Deare *at the shop*. This marked the beginning of a dialogue that continued between the men once both were present in the shop itself, then continued into the parking lot. This continuing dialogue, all on the subject of the malfunctioning gun, renders the parking lot an extension of the premises for our purposes. As in *Harris*, the course of events that culminated in the incident at issue began on the undisputed premises of the employer---here, the shop. As in *Davis*, the parking lot is next to the shop and is maintained for the convenience of the business and its customers. Even though the lot is not technically the shop's premises for purposes of its lease, one would reasonably anticipate activities in connection with the shop to take place there, including employees walking customers out to their cars and continuing to discuss shop-related matters. We conclude that the act occurred on the employer's premises.

The trial court found that the fourth *LeBrane* factor---whether the act occurred during the hours of employment---weighed in favor of vicarious liability. We agree. As the trial court stated, it is clear that the shop was open to Lemaire. The undisputed facts show that Lemaire entered the shop easily, another customer was present when he entered, the lights were on, and Deare freely discussed the business of the gun with Lemaire, who was clearly in the role of a customer at the time. Therefore, the act occurred during the hours of employment.

The first and second *LeBrane* factors are the dominant considerations under these facts and, as noted, we find both weigh in favor of Lemaire. The third factor-

15

--whether the act occurred on the premises---is a close issue in this case, and is therefore of marginal value in our overall decision. While we find the trial court committed manifest error in finding the parking lot was not part of the shop's premises, this finding is not determinative. Even if the parking lot were outside the shop's premises, the other factors of this case point so strongly toward vicarious liability that our result would be the same. Finally, the fourth factor clearly weighs in favor of Lemaire and further supports vicarious liability. Given that no reasonable factfinder could find that the *LeBrane* factors, considered together, do not mandate vicarious liability, we find that Deare was in the course and scope of his employment as manager of the shop when he accidentally shot Lemaire. Therefore, the shop is vicariously liable for this act.

The trial court did not err in bifurcating the issues of liability and damages. There is no evidence that bifurcation prejudiced the plaintiff or that the trial court had prejudged the case. The plaintiff requests that this court reach a decision on the issue of damages in order to put the matter to rest. It is not within the authority of this court to do so. The record is not sufficiently developed for this court to reach a decision as to damages, and the shop must be given the opportunity to assert defenses and cross examine witnesses as to the issue of damages. An award of damages by this court would constitute the exercise of original jurisdiction with which this court is not vested. *See* La. Const. art. V, § 10. Lemaire's additional assignments of error are resolved by the findings herein.

CONCLUSION

In conclusion, for the reasons herein, we reverse the trial court's decision and remand this case for further proceedings consistent with this opinion. All costs of this appeal are assessed to Appellees, Dave Richard and Linda Richard d/b/a Dave's Gun Shop.

16

**REVERSED AND REMANDED.**